# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JOHN MOONEY, | ) CASE NO. 1:21-CV-01227-PAB |
| Plaintiff, | ) |
| | ) JUDGE PAMELA A. BARKER |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) JENNIFER DOWDELL ARMSTRONG |
| | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant, | ) |

## I.      INTRODUCTION

Plaintiff John Mooney ("Mr. Mooney") seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for Disability Insurance Benefits ("DIB"). (ECF Doc. 1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). Pursuant to Local Civil Rule 72.2, this matter was referred to a magistrate judge for preparation of a Report and Recommendation, and it was subsequently reassigned to me pursuant to General Order No. 2022-14. For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

## II.     PROCEDURAL HISTORY

On April 8, 2020, Mr. Mooney filed an application for DIB, alleging a disability onset date of March 31, 2019. (Tr. 11).[1] His application was denied initially on September 25, 2020, and upon reconsideration on October 21, 2020, and Mr. Mooney requested a hearing before an administrative law judge ("ALJ"). (Tr. 228-36, 257-61). On January 28, 2021, the ALJ held a

---

[1] The administrative proceedings transcript can be found at ECF Doc. 6 on CM/ECF.

1

hearing, during which Mr. Mooney, represented by counsel, and an impartial vocational expert testified. (Tr. 195-226). On March 9, 2021, the ALJ issued a written decision finding Mr. Mooney was not disabled. (Tr. 11-21). This decision became final on April 20, 2021, when the Appeals council declined further review. (Tr. 1-7). Mr. Mooney asserts the following assignments of error:

1. The ALJ found at [S]tep [F]ive that the Plaintiff had residual functional capacity for light work. This finding lacks substantial evidence because the record reflects that the Plaintiff could only stand and/or walk for four hours of a normal eight-hour workday, a finding which does not meet the six-hour standard required for light work.

2. The ALJ did not consider or properly articulate their consideration of Veterans Affairs (VA) findings of disability regarding Plaintiff's conditions.

(ECF Doc. 10, PageID#738).

On June 29, 2022, Mr. Mooney and the Commissioner met and conferred by telephone conference. (ECF Doc. 15, PageID#780). The parties agreed that Mr. Mooney's first assignment of error (*i.e.*, the ALJ's finding of light work for Mr. Mooney's RFC) is no longer at issue. (*Id.*). Accordingly, the only assignment of error I will address in this Report and Recommendation is whether the ALJ erred by not discussing the VA's finding of disability regarding Mr. Mooney's conditions.

### III. BACKGROUND INFORMATION

#### A. *Personal, Educational, and Vocational Experience*

Mr. Mooney was born in 1970, and he was 50 years old on the date last insured. (Tr. 19). He lives with his stepfather, and he has two adult daughters. (Tr. 202, 544). Mr. Mooney is a high school graduate. (Tr. 202). At the time of the hearing, he had a driver's license and did not use a handicapped placard or plate. (*Id.*). From 2006 to 2019, Mr. Mooney owned his own construction business focused on home and commercial restoration. (*See* Tr. 203-04). His current source of income is VA disability benefits, which he began receiving in 1991. (Tr. 202).

2

B. *Relevant Hearing Testimony*

1. **Mr. Mooney's Testimony**

Mr. Mooney testified that he stopped working in March 2019 because his neuropathy and back pain made walking intolerable, and his hand swelled "like crazy" whether he was sitting or walking. (*See* Tr. 204). Mr. Mooney stated that he tries to have someone else do his grocery shopping so that he does not have to walk in the store. (Tr. 206). He also has someone else complete household chores, such as cleaning and laundry. (*Id.*). He further testified that he received spinal epidural injections, but he stated that these injections provided very short-term relief (*i.e.*, ten minutes). (*Id.*). He also stated that the oral medication gabapentin only mildly improved his pain symptoms. (*See* Tr. 206-07).

Mr. Mooney testified that he is only able to stand for approximately 20 minutes. (Tr. 207). He stated that he can walk to his mailbox, which is approximately 300 feet away, but he must rest before returning to his home. (*Id.*). He testified that the neuropathy in his feet worsens the longer he is on his feet. (Tr. 207-08). He described his consistent pain as "always walking and s[i]tting on bloody stubs." (Tr. 208). He has tried foot massagers and other medicine to little effect, but he said that the VA merely states that he has exhausted all the things that can be done. (*Id.*). Mr. Mooney stated that he is only able to lift 10 to 15 pounds without making the pain worse. (*Id.*).

Mr. Mooney also testified that he has Type 1 and Type 2 diabetes. (*Id.*). Due to these conditions, he stated that his blood sugar will never be under control. (*Id.*). Additionally, he said that he builds fatty tissue whenever he gives himself a shot of insulin. (*Id.*). He testified that his fluctuating blood sugar levels result in feeling exhausted when his blood sugar is low and twitching when his blood sugar is high. (Tr. 209).

As to his mental health, Mr. Mooney testified that he only sleeps approximately three to four hours because of his post-traumatic stress disorder. (Tr. 209). He currently takes psychiatric medications that help "a little bit" with his PTSD symptoms. (Tr. 209-10). He described the medications' effect as making him feel less edgy and jumpy. (Tr. 210). He stated that he experiences anxiety attacks once a day for anywhere between one to four hours. (*See id.*). He testified that he has difficulty interacting with other people. (Tr. 210-11). He described this as feeling "on edge" all the time because he is worried something will happen. (Tr. 211). This feeling increases the more people are around him. (*Id.*). He also testified that his PTSD makes it difficult for him to focus or concentrate. (Tr. 211-12).

Mr. Mooney also testified that he has pain in his knees, but he stated that this pain is less severe than his back pain and feet neuropathy. (Tr. 211). Specifically, he stated that his back pain and feet neuropathy overpower his knee pain. (*Id.*). He testified that his knees are more comfortable in a straight position. (*Id.*).

Finally, Mr. Mooney testified that he uses a cane to move around. (Tr. 212). He stated that this cane was given to him by his VA doctor approximately eight months before the hearing. (*Id.*). He uses the cane when he leaves the house because when he is in his house, he can hang on to something to move around. (*Id.*). He testified that he has difficulty using the stairs and bending over, kneeling down, and getting down on the floor. (Tr. 213).

### 2. Vocational Expert's Testimony

The vocational expert ("VE") testified that Mr. Mooney's past relevant work was as a construction worker (*Dictionary of Occupational Titles* ("DOT") #869.664-014). (Tr. 221). The ALJ asked the VE to consider a person with Mr. Mooney's age, education, and job history who would be limited to occasionally lifting, standing, or carrying 20 pounds; frequently lifting,

standing, or carrying 10 pounds; standing and/or walking or sitting with normal breaks for six hours in an eight-hour workday; sitting with normal breaks for about six hours in an eight-hour workday; unlimited pushing and pulling other than the previous limitations for lifting or carrying; occasionally stooping, kneeling, crouching, or crawling; never climbing ropes and ladders; and avoiding hazardous machinery, unprotected heights, and commercial driving. (Tr. 221-22).

In addition, the ALJ asked the VE to consider the following mental limitations: (1) a work environment where there are no tasks that involve high production quotas or fast-paced production demands; (2) occasional interaction with coworkers and the public; (3) no work tasks involving customer service duties, confrontation, conflict resolution, directing the work of others, or persuading others; and (4) only occasional changes in workplace tasks or duties. (Tr. 222). The VE opined that this individual could not perform Mr. Mooney's past relevant work but could perform work as a packager (DOT#559.687-074), garment sorter (DOT#222.687-014) and inspector (DOT#408.687.010).

As a second hypothetical, the ALJ asked the VE to consider an individual with the same limitations from the hypothetical, except that individual is now limited to standing and/or walking with normal breaks for a total of four hours in an eight-hour work day. (Tr. 223). The VE opined that this individual would not be able to perform Mr. Mooney's past work, but he would still be able to perform some work at the light exertional level, despite the limitation of standing and/or walking with normal breaks for four hours. (*Id.*).

As a third hypothetical, the ALJ asked the VE to consider the same individual from the first hypothetical, except that this individual is now reduced to standing and/or walking for two hours in an eight-hour work day. (Tr. 223-24). The VE opined that there would be no jobs at the

5

light exertional level that his individual could perform because that would be a sedentary profile. (Tr. 224).

The ALJ asked whether there was any period of time where she would need to know whether Mr. Mooney had any skills that were transferred from jobs that he could perform within the third hypothetical. (Tr. 224). The VE opined that there was no such period of time. (*Id.*). The ALJ also asked whether there was any period of time where the hypothetical individual was not yet 50 years of age and was able to perform sedentary, unskilled jobs. (*Id.*). The VE opined that the hypothetical individual would be able to perform work as a sorter (DOT #521.87-086), sealer (DOT#559.687-014), and assembler (DOT #706.684-030). (*Id.*).

Finally, the ALJ asked the VE if there was any conflict between the VE's testimony and the DOT and the *Selected Characteristics of Occupations*. (Tr. 225). The VE testified that there was only an inconsistency regarding the ALJ's hypotheticals limiting the individual to standing and/or walking with normal breaks two hours and four hours out of a normal eight-hour work day. (*Id.*).

### C. *Relevant Medical/Non-Medical Opinion Evidence*

#### 1. Opinions Regarding Mental Health

##### a. Curt Ickles, PhD

In September 2020, Dr. Ickles conducted a consultative mental health evaluation of Mr. Mooney. (Tr. 543-47). Dr. Ickles opined that Mr. Mooney can understand, carry out, and remember both one-step and complex instructions and can concentrate and persist on tasks at home and when working alone. (Tr. 546). Regarding Mr. Mooney's ability to concentrate and persist at tasks at home, Dr. Ickles observed that it is likely that Mr. Mooney's psychological distress could significantly impair his ability to complete work-related activities at a reasonable pace if he worked

6

with the public or interacted with co-workers regularly. (*Id.*). Dr. Ickles further elaborated that "employment involving regular contact with the public would be problematic." (*Id.*). Finally, Dr. Ickles opined that exposure to typical work stress would likely increase the severity of Mooney's anxiety symptoms. (Tr. 547).

### b. State Agency Opinions

Both state agency psychological consultants (Drs. Todd Finnerty, PsyD and Paul Tangeman, PhD) opined that Mr. Mooney has no more than moderate mental limitations. (Tr. 231, 234-35, 239-40, 242-43). Specifically, they opined that Mr. Mooney can perform a variety of tasks without strict requirement of maintaining fast pace or high production quotas over time; have "occasional superficial contacts" with others; and perform routine tasks with occasional changes. (Tr. 234-35, 243)

### 2. Opinions Regarding Physical Health

### a. Jenna Borys, D.O.

In September 2020, Dr. Borys conducted a consultative physical examination of Mr. Mooney. (Tr. 553). Dr. Borys opined that Mr. Mooney "may still be able to require" light to sedentary work "although [he] may not be able to do so at a 40 hour work week." (*Id.*). Dr. Borys further opined that Mr. Mooney, with restricted hours, would benefit from a "mostly sedentary position" where he is able to alternate between sitting and standing. (*Id.*). Dr. Borys recommended that Mr. Mooney be restricted to lifting less than 20 pounds due to his history of back pain that will "naturally progress." (*Id.*). Finally, Dr. Borys opined that Mr. Mooney may have difficulty with fine motor skills and could not tolerate standing for full days. (*Id.*).

### b. State Agency Opinions

Both state agency physicians (Drs. Gary Hinzman, MD and Gerald Klyop, MD) opined that Mr. Mooney can perform light exertion work tasks, with occasionally lifting up to 20 pounds and frequently lifting 10 pounds; never climbing ladders, ropes, or scaffolds; and occasionally climbing ramps or stairs, stooping, kneeling, crouching or crawling. (Tr. 233-34, 242-43).

### D. *Relevant Medical Evidence*

The ALJ summarized Mr. Mooney's health records and symptoms as follows:

Through the date last insured, the claimant had the following severe impairments: type 1 diabetes mellitus, with diabetic neuropathy; degenerative disc disease of the lumbar spine; degenerative joint disease of the left knee; and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

…

The record also includes evidence of body-mass index (BMI) calculations which classify the claimant as obese. (Ex. 4F/3) The claimant has declined referral for weight loss and obesity treatment, and there is insufficient evidence in the record to conclude that excess weight has caused the claimant more than minimal limitations in his ability to perform work activity. (Ex. 5F/117) Obesity is thus, nonsevere.

…

The records confirm the claimant's testimony that he has been diagnosed with both type 1 and type 2 diabetes mellitus, with neuropathy symptoms. (Ex. 5F/6, 11) Earlier records indicate primarily type 1 diabetes treatment, and "decreased," but not absent, sensation of his bilateral feet in May 2019. (Ex. 2F/93) Although his diabetes has never been characterized as controlled, the degree of neuropathy symptoms to which the claimant testified are not memorialized in the record. 2018 and 2019 records are relatively sparse, with evidence of uncontrolled blood sugars, but not to a degree which warranted medical notation.

In August 2020, the claimant presented "for foot care and amputation prevention" with a blood sugar level of 79, reporting "knots" in his feet, and having been prescribed two pairs of diabetic shoes in the preceding year. (Ex. 2F/20) September 2020 records indicate that the claimant maintained enough sensation in his feet that he was still able to drive, and the claimant testified that he continues to drive occasionally. (Ex. 4F/1-2) Although the claimant reports using a cane when his back pain is exacerbated, he testified that he purchased the cane at his doctor's recommendation, but not prescription. (Ex. 4F/1-2) The claimant further reported

8

that he believed he could still bench press 250 pounds in September 2020, so the question of limitation pertains to his ambulatory ability, rather than strength. (Ex. 4F/1-2)

Complicating the physical consultative exam results, the claimant had sustained an injury to his left knee, which presumably increased his pain in that joint, and further impacted the "slight limp" which was observed. (Ex. 4F/3)

October 2020 records acknowledge the claimant's report of foot pain, but also indicate that "intensive glycemic control is the first avenue for pain control." (Ex. 5F/61) At that time, the claimant's A1c level was noted to be consistently over 8, but there is also a notation that, with the exception of Pregabaline, the claimant's medications "do not seems to have been refilled over time." (Ex. 5F/111) The following month, the claimant was prescribed trials of Gabapentin an Nortriptyline, which he later indicated were not effective. (Ex. 5F/58-60) As of November 24, 2020, the final record before the date last insured, the records note only that the claimant "has been treated for neuropathic pain in the past by multiple avenues of medicine, accupunture. (sic) Current sypmtoms are thought to be from poorly controlled DM with AiC (sic) > 8 for last 8 years." (Ex. 5F/54) There is no further objective medical evidence of the degree of the claimant's neuropathy symptoms which is consistent with his testimony or allegations.

The objective medical evidence does contain MRI of the claimant's lumbar spine, which showed "mild" disc bulges from L1-L4 and a moderate disc bulge with moderate neuroforaminal narrowing at L4-L5 in July 2018. (Ex. 2F/75-76) November 2019 records indicate a report of ongoing back pain, but also that the claimant "says that he has no problem in flexibility and he is able to do what he wants and touch his toes," albeit with consistent pain. (Ex. 2F/53) Records from the same date reiterate that the MRI showed "for the most part *mild* spondylosis with disc bulges at L4-L5 and L5-S1 and *slight* foraminal narrowing." (Ex. 2F/53, emphasis added)

Related to the claimant's knees, August 2020 records note that the claimant alleged bilateral '10/10' level pain, and was insistent that "it's not just arthritis!" (Ex. 2F/35) Although previous x-rays had not shown bone or joint abnormality, the August 2020 records reference "left knee dysfunction noted with medial meniscus." (Ex. 2F/30, 18) A November 2020 MRI of the claimant's left knee later confirmed "degenerative change. Joint effusion. Anterior soft tissue swelling," along with "moderate-severe osteoarthritis of the medial femorotibial compartment with moderate-severe cartilage thinning" and chondromalacia. (Ex. 5F/30-32)

(Tr. 13-14, 17-18).

## IV. THE ALJ'S DECISION

In her March 2021 decision, the ALJ made the following findings:

9

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2020.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 31, 2019 through his date last insured of December 31, 2020 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: type 1 diabetes mellitus, with diabetic neuropathy; degenerative disc disease of the lumbar spine; degenerative joint disease of the left knee; and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can stand and/or walk for a totally of 4 hours in an 8-hour workday; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; and the claimant must avoid hazardous machinery, unprotected heights, and commercial driving. He must work in an environment free of high production quotas or fast-paced production demands; he can interact with others occasi[o]n[a]lly, but should not perform any tasks which involve customer service duties, confrontation, conflict-resolution, directing the work of others, or persuading others; and he can tolerate occasional changes in otherwise static work duties.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born [in 1970] and was 50 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in

significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 31, 2019, the alleged onset date, through December 31, 2020, the date last insured (20 CFR 404.1520(g)).

(Tr. 13-21).

V. **LAW AND ANALYSIS**

A. *Standard of Review*

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); see also 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip* at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the

regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

## B. *Standard for Disability*

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step

Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

### C. *Under the SSA's New Regulations (20 C.F.R. § 404.1520b(c)), the ALJ was Not Required to Analyze the VA's Disability Rating Regarding Mr. Mooney's Conditions.*

Mr. Mooney argues in his sole assignment of error that the ALJ erred by failing to consider or articulate her consideration of the VA's disability rating regarding Mr. Mooney's conditions. (ECF Doc. 10, PageID#745-47). Citing SSR 06-03p and *Joseph v. Berryhill*, No. 3:16CV02259, 2017 WL 3736787 (N.D. Ohio Aug. 30, 2017), Mr. Mooney argues that the ALJ was required to do more than simply consider the evidence underlying the VA's disability rating. (*Id.* at PageID#745-46). Rather, he contends that the ALJ was required to articulate her reasons for crediting or rejecting the VA rating. (*Id.*).

The Commissioner argues that the ALJ did not err because, under the new regulations applicable to Mr. Mooney's claims, the ALJ is not required to consider the VA's findings regarding Mr. Mooney's disability. (ECF Doc. 12, PageID#768). Although the ALJ was not required to address Mr. Mooney's VA disability rating, the Commissioner asserts that the ALJ reasonably considered Mr. Mooney's VA medical records when addressing his DIB claim. (*Id.* at PageID#768-69).

Mr. Mooney's reliance on SSR 06-03p is unavailing because it was inapplicable at the time of his claim filing. The SSA rescinded SSR 06-03p when it amended 20 C.F.R. § 404.1504, effective March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical* Evidence, 82 Fed. Reg, 5844-01, 5844-45 (Jan. 18, 2017); *see also Revisions to Rules Regarding the Evaluation of Medical* Evidence, 81 Fed. Reg. 62560, 64564-65 (proposed Sept. 9, 2016) ("VA and SSA disability differ significantly in purpose as well in eligibility criteria….the mere fact that

the VA process resulted in a particular disability rating is not predictive or useful evidence of whether the claimant will be found disabled under [SSA] rules, even upon consideration of the same impairment(s).").

Here, because Mr. Mooney filed his DIB claim on April 8, 2020, the ALJ was bound to apply 20 C.F.R. § 404.1520b(c), which applies to cases filed on or after March 27, 2017. (Tr. 11). Under this regulation, certain evidence is deemed "inherently neither valuable nor persuasive to issue of whether [the claimant] is disabled." 20 C.F.R. § 404.1520b(c). Thus, an ALJ need not "provide any analysis about how [sh]e considered such evidence in [her] decision." *Id.* The list of evidence under the applicable regulation includes disability findings and decisions by other governmental agencies, including those of the VA. *Id.*

The Social Security Administration addresses this evidence in 20 C.F.R. § 404.1504, explaining:

> Other governmental agencies and nongovernmental entities—such as the **Department of Veterans Affairs**, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers—make **disability**, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. ***Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).***

20 C.F.R. § 404.1504 (emphasis added). Therefore, Mr. Mooney's argument that the ALJ failed and/or was required to analyze or weigh the VA's disability rating fails under the applicable regulation. *See Gibbas v. Comm'r of Soc. Sec.*, No. 3:19-cv-400, 2021 WL 4451669, at *4-5 (S.D.

Ohio Sept. 29, 2021) ("Because [the plaintiff's] claim was filed after March 27, 2017, the ALJ was not required to provide any analysis of the VA's disability rating."). The only evidence that the ALJ needed to consider was the evidence underlying the VA's determination. 20 C.F.R. § 404.1504.

Similarly, Mr. Mooney's reliance on *Joseph v. Comm'r of Soc. Sec.*, 741 F. App'x 306, 307 (6th Cir. 2018) for the proposition that the ALJ erred by failing to explain how she considered the VA's disability rating is also unavailing. This authority is inapposite because, as stated previously, Mr. Mooney filed his DIB application on April 8, 2020; conversely, the plaintiff's claim in *Joseph* was filed in May 2015. (Tr. 11); *McKendrick v. Kijakazi*, No. 3:21-CV-224-JEM, 2022 WL 1508890, at *4 (M.D. Tenn. May 12, 2022) (distinguishing on same basis). In January 2017, the SSA revised its regulations to provide that, for claims filed on or after March 27, 2017, an ALJ "will not provide any analysis" in his decision about a disability decision made by another governmental agency such as the VA. 20 C.F.R. § 404.1504.

Moreover, several courts in the Sixth Circuit have determined that under the new, applicable regulations, an ALJ is not required to analyze or weigh the VA's disability rating. *See Shirey v. Comm'r of Soc. Sec.*, No. 5:21-CV-00137-SO, 2022 WL 2612111, at *17 (N.D. Ohio May 5, 2022) ("The SSA does not require its ALJs to provide an analysis of the other agency's decision…However, the ALJ is required to consider all of the evidence supporting the other agency's decision received as evidence in the claim."), *report and recommendation adopted*, 2022 WL 365769 (N.D. Ohio Aug. 25, 2022) (citations omitted); *Stipkovich v. Comm'r of Soc. Sec.*, No. 1:20cv509, 2021 WL 467189, at *10 (N.D. Ohio Jan. 21, 2021), *report and recommendation adopted*, 2021 WL 463512 (N.D. Ohio Feb. 8, 2021) (finding that 20 C.F.R. § 404.1504 has "no requirement that the ALJ analyze determinations made by other state governmental agencies");

15

*Raymond R. v. Comm'r of Soc. Sec.*, No. 1:21-cv-539, 2022 WL 1590817, at *3-4 (S.D. Ohio May 19, 2022), *report and recommendation adopted*, 2022 WL 2965289 (July 27, 2022) (noting that "the ALJ was not required to provide any analysis concerning plaintiff's disability rating from the VA"); *Shoen v. Comm'r of Soc. Sec.*, No. 1:21-cv-763, 2022 WL 3152233, at *3-4 (W.D. Mich. Aug. 8, 2022) (finding no error where ALJ failed to analyze claimant's 100% VA disability rating because 20 C.F.R. § 404.1504 "refute[d] [the plaintiff's] contention that the ALJ failed and/or was required to analyze or weigh the VA's disability rating").

Finally, as stated previously, the ALJ was only required to consider the evidence underlying the VA's disability determination. 20 C.F.R. § 404.1504.; *Stipkovich*, 2021 WL 467189, at *10; *Shirey*, 2022 WL 2612111, at *17. Mr. Mooney appears to concede that the ALJ examined the records underlying the VA's disability benefits decision. (*See* ECF Doc. 10, PageID#746). Indeed, the ALJ's decision does in fact indicate that the ALJ reviewed the medical findings informing the VA decision as required by the new regulations—even without analyzing the VA's disability rating. (*See generally* Tr. 13, 15-19).

For example, the ALJ discussed the VA records regarding Mr. Mooney's diabetes and its related symptoms, as well as his treatment records, including his knee conditions and imaging related to his lumbar spine. (Tr. 13, 15-19; *see, e.g.*, Tr. 477, 500, 522, 539, 565, 570, 613, 620, 670). The ALJ even considered VA medical records concerning Mr. Mooney's gastroesophageal reflux disease, headaches, hypertension, and allergic rhinitis with asthma. (Tr. 13; *see, e.g.*, Tr. 667). Mr. Mooney fails to establish—much less argue—that the ALJ failed to consider the underlying medical records. (ECF Doc. 10, PageID#745-47). Further, the ALJ articulated reasoning for why the cited VA medical records led to her specific RFC finding. (*See generally*

16

Tr. 17-18). *Shirey*, 2022 WL 2612111, at *18. Accordingly, I recommend that the Court reject this assignment of error because it lacks merit.

## VI. RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court OVERRULE Mr. Mooney's assignment of error and affirm the Commissioner's decision.

Dated: May 31, 2023                       s/ *Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## VII. NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).